UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN ALEXANDER OCKLESTON,          )
                                   )
         Plaintiff,                )
                                   )
     v.                            )    Civil Case No. 17-662 (RJL)
                                   )
ANDREW SAUL,                       )
Commissioner of Social Security    )
                                   )
         Defendant.                )

**MEMORANDUM OPINION**

June 18, 2020 [Dkt. ##15, 16]

Plaintiff John Alexander Ockleston ("plaintiff") brings this action against defendant Andrew Saul, Commissioner of Social Security ("defendant" or "Commissioner"). Plaintiff seeks the reversal under 42 U.S.C. § 405(g) of the Commissioner's final decision denying plaintiff's application for disability insurance benefits and supplemental security income. Plaintiff claims that the Commissioner's final decision was not based on substantial evidence and applied the wrong legal standards. Before the Court is plaintiff's Motion for Judgment of Reversal [Dkt. #15] and defendant's Motion for Judgment of Affirmance [Dkt. #16]. For the following reasons, the Court DENIES plaintiff's motion and GRANTS defendant's motion.

**BACKGROUND**

In February 2013, plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income, alleging that he had become disabled

and unable to work due to severe back pain, depression, and anxiety. Administrative Record ("A.R.") at 198, 207. Plaintiff had been working as a plumber for over twenty years when, on August 4, 2008, he slipped in a basement on the job, twisted his body, and fell backward onto his back and buttocks. A.R. at 240, 350. After the accident, he experienced significant lower back pain as well as pain radiating down his left leg. A.R. at 229, 350–51. The following day, during a visit to his primary care physician, Dr. Ted Vargas, a magnetic resonance imaging ("MRI") showed disc protrusion to the left side and a disc bulge in his lumbar spine. A.R. at 351. After trying a series of spinal injections to relieve pain, plaintiff still experienced significant back pain. A.R. at 351. Almost two years after the fall, on July 19, 2010, Dr. David Raskas performed a lumbar fusion surgery and inserted a biomechanical spacer to alleviate plaintiff's back pain. A.R. at 351. After the surgery, while plaintiff experienced reduction in the pain in his back and left leg, he reported experiencing new pain in his right leg and arm. A.R. at 365, 589, 603. This pain did not materially improve with epidural injections or physical therapy. Plaintiff's Addendum ("Add.") at 8, 11 [Dkt. #15-3]. Due to this ongoing pain, plaintiff has not worked since February 2009. A.R. at 48.

In February 2013, plaintiff applied for disability insurance benefits and supplemental security income. A.R. at 198, 207. He alleged that since August 4, 2008, he had been experiencing back pain, right arm numbness, anxiety, depression, and migraines. A.R. at 198, 207, 273. On April 18, 2013, the Social Security Administration denied his application. A.R. at 108–09. Plaintiff then requested that an Administrative Law Judge ("ALJ") review this denial. A.R. at 118–19. On April 21, 2015, the ALJ held a hearing in

St. Louis, Missouri and heard plaintiff's testimony. A.R. at 40–64. On June 19, 2015, the ALJ found that plaintiff was not disabled and rejected plaintiff's claims to disability insurance benefits and supplemental security income. A.R. at 34. Specifically, the ALJ determined that plaintiff had a severe impairment of lumbar degenerative disc disease. A.R. at 23. However, she concluded that plaintiff's residual functional capacity allowed him to perform sedentary plumbing-related jobs, so he did not meet the definition of "disabled" under 42 U.S.C. § 423. A.R. at 26, 31–34. Accordingly, the Appeals Council denied plaintiff's request for review, A.R. at 1, and the Commissioner adopted the ALJ's decision, A.R. at 20.

## STANDARD OF REVIEW

The District Court must affirm an ALJ's decision if it is supported by "substantial evidence" in the record. 42 U.S.C. § 405(g) (2005); *Brown v. Bowen*, 794 F.2d 703, 705 (D.C. Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard demands "more than a scintilla, but less than a preponderance of the evidence." *Affum v. United States*, 566 F.3d 1150, 1163 (D.C. Cir. 2009). This Court must engage in "careful scrutiny of the entire record." *Brown*, 794 F.2d at 705. However, the Court must not substitute its own judgment for that of the Commissioner. *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004).

When evaluating a claim of disability, the ALJ conducts a five-step inquiry to determine if the claimant suffers from a "disability." The burden of proof is on the claimant

to satisfy the first four steps. *Stankiewicz v. Sullivan*, 901 F.2d 131, 133 (D.C. Cir. 1990). At step one, the claimant must show that he is not presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the ALJ determines the claimant is not gainfully employed, at step two, the claimant must show he has a "severe impairment" that "significantly limits [his] . . . ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c). If the ALJ determines the claimant has a severe impairment, at step three, the ALJ must determine whether the claimant's impairment "meets or equals" an impairment listed in the regulations. *Id.* §§ 404.1520(d), 416.920(d). If it does, the claimant "is deemed disabled and the inquiry is at an end." *Butler*, 353 F.3d at 997; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, the Commissioner must assess the claimant's "residual functional capacity," 20 C.F.R. §§ 404.1520(e), 416.920(e) – *i.e.*, the most work the claimant can still perform despite his limitations, *id.* § 404.1545(a). At step four, the claimant must demonstrate that he is incapable of performing his prior work based on his residual functional capacity. *Id.* §§ 404.1520(f), 416.920(f).

If claimant makes each of these four necessary showings, the burden shifts to the Commissioner for the fifth step: to show that the claimant can do "other work," considering his age, education, past work experience, and residual functional capacity. *Id.* §§ 404.1520(f)–(g), 416.920(f)–(g). If the claimant is not able to do other work, he is considered disabled and is entitled to benefits.

## ANALYSIS

First, plaintiff contends the ALJ assigned improper weight to the testimony of various health care providers in determining that plaintiff's physical impairments did not

prevent him from performing certain sedentary work. According to plaintiff, the ALJ (a) placed too much weight on Dr. Raskas's finding that plaintiff's spine did not show mal-alignment following his surgery, Pl.'s Mot. for J. of Reversal at 6–7 [Dkt. #15], (b) ignored Dr. Raskas's and Dr. Collinson's diagnoses that he suffered from "failed back surgery syndrome," *id.* at 9–10, and (c) improperly discounted Dr. Volarich's and Dr. Vargas's recommendations that plaintiff's physical movement be restricted, *id.* at 9. I disagree.

The ALJ's conclusion that plaintiff's back showed "good alignment and only minimal degenerative changes," A.R. at 28, is supported by substantial evidence. How so? The ALJ reviewed a variety of objective medical evidence as well as opinions from various medical professionals who treated plaintiff. In May 2011, after plaintiff's surgery, x-rays showed normal lumbar alignment and good placement of hardware. A.R. at 336–37, 346. A month later, Dr. Raskas determined that myelography and a CT scan showed "a solid [lumbar] fusion," good positioning of plaintiff's disc arthroplasty, and no stenosis. A.R. at 587, 597. Almost a year later, Dr. Matthew Gornet noted that magnetic resonance imaging demonstrated early bone consolidation consistent with fusion. A.R. at 365. Despite plaintiff's insistence that his spine remained mal-aligned after the surgery, the ALJ's finding was plainly supported by substantial evidence.

The ALJ's related conclusion that plaintiff did not suffer from "failed back surgery syndrome," A.R. at 29, was similarly supported by substantial evidence. As noted, Dr. Raskas concluded that the surgery had achieved "a solid [lumbar] fusion." A.R. at 587. Dr. Gornet agreed that plaintiff's back surgery was performed "quite well" and that plaintiff's spine was consolidating in a manner indicative of successful fusion. A.R. at

365–66. The ALJ was in a much better position than this Court, to say the least, to evaluate the medical evidence and weigh the various opinions of different medical providers. I conclude the ALJ's findings are supported by substantial evidence.

The ALJ's conclusion that plaintiff could perform sedentary work, A.R. at 26, was also supported by substantial evidence. The ALJ evaluated various medical opinions, their consistency with each other, the purpose for which they were made, and their underlying data. For example, the ALJ considered Dr. Volarich's and Dr. Vargas's recommendations, *see* A.R. at 29–30, 32–33, 347–48, 360, 363, but reasonably discounted their findings that plaintiff was entirely disabled from work because these findings were inconsistent with the objective medical evidence. Regarding their opinions that plaintiff could not lift any weight over five or ten pounds, *see* A.R. 347, 363, the ALJ reasonably gave weight to Dr. Raskas's statement that he had seen photos of plaintiff bending, lifting, and carrying chairs that weighed twenty to thirty pounds, A.R. at 588. Moreover, plaintiff admitted that he went grocery shopping for short periods of time, performed some household chores like washing dishes and sweeping, and occasionally drove a car. A.R. at 26–27, 52–54, 237, 282–93. While plaintiff reported experiencing some pain or discomfort during these activities, "the mere fact that working may cause a claimant pain or discomfort does not mandate a finding of disability." *Brown*, 794 F.2d at 707. After evaluating the entire record, the ALJ reasonably concluded that plaintiff could perform sedentary work within certain limitations.

Next, plaintiff contends that the ALJ assigned improper weight to the testimony of mental health providers. Plaintiff asserts the ALJ should have relied on Dr. Allen Fraser's

diagnosis that plaintiff's depression was severe and disabling rather than Dr. Mohinder Partap's contrary conclusion. Pl.'s Mot. for J. of Reversal at 14, 16. Plaintiff further argues the ALJ improperly relied on general observations that plaintiff was polite and cooperative in determining that his depression and anxiety were not disabling. *Id.* at 15–16.

I find that substantial evidence supports the ALJ's conclusion that plaintiff's impairments of depression and anxiety do not cause more than minimal limitations in his ability to work and are therefore not severe, A.R. at 24–25. While Dr. Fraser concluded that plaintiff's depressive symptoms, including reduced concentration and slowed thinking, significantly interfered with his ability to work, his opinion was not consistent with plaintiff's limited history of mental health treatment. *See* A.R. at 25. Plaintiff has never required inpatient mental health treatment and has seen improvement after being prescribed medication for his symptoms. A.R. at 24. Moreover, the ALJ reasonably relied on the mental health opinion of Dr. Partap, who had an ongoing treatment relationship with plaintiff that was more extensive than plaintiff's relationship with Dr. Fraser. *Compare* A.R. at 372–78 (four treatment visits with Dr. Partap), *with* A.R. at 637–38 (one consultative referral visit with Dr. Fraser). The ALJ correctly assigned "more weight" to the opinion of a "treating source [who] has seen [plaintiff] a number of times and long enough to have obtained a longitudinal picture of [his] impairment." *See* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). Dr. Partap concluded that plaintiff's mental health issues presented only minimal functional limitations in his ability to cope with stress, function independently, relate in social situations, and follow instructions in a work setting. A.R. at 611–12. Indeed, several doctors noted that while plaintiff was somewhat depressed

7

and angry about his back problems, he was alert, cooperative, logical, goal directed, and well oriented. A.R. at 330, 338, 355, 372, 604. Upon review of the underlying medical opinions, I find the ALJ's conclusion that plaintiff's anxiety and depression were not a severe impairment to be supported by substantial evidence.

Finally, plaintiff contends that the ALJ improperly discounted the opinions of two vocational experts in assessing plaintiff's ability to obtain employment in the national economy. Pl.'s Mot. for J. of Reversal at 17–18. Plaintiff also contends the ALJ failed to hear testimony of a vocational expert addressing the number of jobs available in the national economy. *Id.* at 19. On the one hand, Delores Gonzalez reviewed the restrictions recommended by Dr. Volarich and Dr. Vargas and opined that plaintiff would not be able to find employment in the competitive labor market. A.R. at 260. On the other hand, James England reasoned that plaintiff's skills as a plumber would make him marketable as a plumbing inspector, a cost estimator for a plumbing company, or a clerk in a hardware or supply store, none of which require physical exertion. A.R. at 671–72. I find that the ALJ properly credited James England's opinion that plaintiff could find sedentary plumbing-related employment even with his limitations. The ALJ also reasonably considered the medical-vocational guidelines and found that a significant number of jobs in the national economy exist that plaintiff could perform. *See Smalls v. Shalala*, 996 F.2d 413, 416 (D.C. Cir. 1993); *Heckler v. Campbell*, 461 U.S. 458, 467–68 (1983). Considering plaintiff's age, education, work experience, and capacity for sedentary work, the ALJ correctly determined based on the medical-vocational guidelines that a significant number of jobs existed for plaintiff. A.R. at 33–34.

Because the ALJ appropriately applied the law in evaluating the record and based her findings on substantial evidence, I must affirm the Commissioner's final decision.

## CONCLUSION

For the foregoing reasons, plaintiff's Motion for Judgment of Reversal [Dkt. #15] is DENIED, and defendant's Motion for Judgment of Affirmance [Dkt. #16] is GRANTED.  An appropriate Order will issue with this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge